OPINION OF THE COURT
Michael D. Stallman, J.
This motion to dismiss raises unusual questions relating to the Civil Court’s territorial jurisdiction, the Supreme Court’s transfer power and the doctrine of direct estoppel.
PROCEDURAL HISTORY
Plaintiff, an attorney, sues defendant,[1] an indefinitely suspended attorney, for $3,147.99 on various theories arising from an alleged independent contractor agreement. Defendant *149 asserts that the Civil Court lacks subject matter jurisdiction and personal jurisdiction.
In 1988, plaintiff commenced a prior action against the corporate defendant in Civil Court, New York County on the same claim. Defendant moved to dismiss for lack of personal jurisdiction, asserting that all dealings occurred in Westchester County, outside the territorial jurisdiction of the Civil Court. After a hearing, the court found that defendant lacked the necessary relationship to New York City. (Spinnell v Doris L. Sassower, P. C., Civ Ct, NY County, Oct. 4, 1988, Arber, J. [docket No. 01236188].) The court dismissed with leave to sue in a proper jurisdiction.
Approximately six months later, plaintiff commenced this action in Supreme Court, New York County on the same claim. Apparently during routine screening, the Supreme Court transferred it to Civil Court pursuant to CPLR 325 (d), presumably since the ad damnum was under $25,000.
Ten months later, this case first appeared on the Civil Court Trial I Calendar. Defendant served this motion on November 18, 1991; it was repeatedly adjourned in Special Term, Part I until submission.
This court must resolve three issues: First, is the Supreme Court empowered under CPLR 325 (d) to transfer to Civil Court an action over which the Civil Court lacks territorial jurisdiction? Can a defendant waive this jurisdictional defect, and was it waived in the case at bar? Finally, what can the Civil Court appropriately do regarding an action mistakenly transferred by the Supreme Court?
A. Transfer Power of the Supreme Court Under CPLR 325 (d)
CPLR 325 (d) authorizes the adoption of court rules that empower a court to transfer a pending action, without the parties’ consent, to a lower court that has jurisdiction except for the amount demanded. (CPLR 325 [d]; see, NY Const, art VI, § 19 [k] [enabling provision].) After transfer, the lower court can award up to the ad damnum. Rules have been promulgated that authorize the Supreme Court within New York City to transfer such actions to the Civil Court. (22 NYCRR 202.13.) CPLR 325 (d) authorizes transfer to the lower court only if the lower court has both personal jurisdiction and subject matter jurisdiction other than monetary jurisdic *150 tian; a case may not be transferred solely because the dollar amount sought is within the lower court’s jurisdictional limit. (See, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C325:4, at 565.)
Conversely, the Civil Court will not automatically have, or derivatively acquire, jurisdiction upon transfer simply because the Supreme Court had jurisdiction when the action was commenced there. (See, Hyman & Gilbert v Greenstein, 138 AD2d 678.) To argue that the Supreme Court transfer order transfers the Supreme Court’s jurisdiction, in addition to the action, not only violates the statute, it is conceptually unsound. It ignores the clear limiting language of CPLR 325 (d): "and the lower court would have had jurisdiction but for the amount * * * demanded” (emphasis added). Moreover, no court, not even a superior court of general jurisdiction (e.g., the Supreme Court), is empowered to delegate or transfer its jurisdiction to another court.
A plain reading of CPLR 325 (d) reveals that the Legislature intended that the transferee lower court have both subject matter and personal jurisdiction. The Legislature did not attach any limiting adjectives to the word "jurisdiction.” CPLR 325 (d) thus expands only the monetary jurisdiction of the lower court, only for the case so transferred. The words "but for the amount of damages demanded” are the only words of limitation. They thus require that the lower court already have such subject matter and personal jurisdiction as would have permitted the transferred action to have been brought there originally, if the amount in controversy had been below the lower court’s monetary ceiling. (See, Friedman v Strand, 203 Misc 170 [Levy, J.] [pre-CPLR].)
B. Subject Matter Jurisdiction of the Civil Court
The Civil Court has subject matter jurisdiction over causes of action for the recovery of money which do not exceed $25,000. (See, NY Const, art VI, § 15; CCA 202.) The basis of this motion, viz., the statutory requirement that the litigation have a geographical nexus with the City of New York, does not relate to the Civil Court’s subject matter jurisdiction. (See, CCA 404, and discussion infra.) Thus, the Civil Court has subject matter jurisdiction over this action; defendant’s motion to dismiss on this ground is denied.
C. Territorial Jurisdiction of the Civil Court
CCA 404 provides as follows:
"(a) Acts which are the basis of jurisdiction. The court may *151 exercise personal jurisdiction over any non-resident of the city of New York, or his executor or administrator, as to a cause of action arising from any acts enumerated in this section, in the same manner as if he were a domiciliary of the state and a resident of the city of New York if, in person or through an agent, he:
"1. transacts any business within the city of New York or contracts anywhere to supply goods or services in the city of New York; or
"2. commits a tortious act within the city of New York, except as to a cause of action for defamation of character arising from the act; or
"3. owns, uses or possesses any real property situated within the city of New York.” (Emphasis added.)
CCA 404 (a) is the local analog of New York’s long-arm statute, which asserts the State’s personal jurisdiction over New York-related acts of out-of-State individuals and corporations. (Cf, CPLR 302.) Historically, geographical limits on a court’s personal jurisdiction were viewed as a consequence of State sovereignty. (See, Pennoyer v Neff, 95 US 714.) They were regarded as necessary to prevent a State from exceeding the scope of its sovereignty and infringing upon that of other States. More recently, a territorial nexus between the forum State, the defendant and the litigation has been viewed as a necessary component of due process. Otherwise, a defendant might be haled into court in an inconvenient and remote forum. To compel a person to defend an action, when that person lacks such minimum contact with the forum, would be inconsistent with fair play and substantial justice. (International Shoe Co. v Washington, 326 US 310; Burger King Corp. v Rudzewicz, 471 US 462.)
The territorial jurisdiction of the Civil Court is prescribed for precisely the same reasons. Basic fairness dictates that a defendant should not be forced to defend an action in a local court in a locality with which she has no connection. It is no coincidence that the language of CCA 404, which enumerates the New York City-related acts triggering the Civil Court’s territorial jurisdiction, is virtually identical to the equivalent provisions of the long-arm statute, which enumerates the New York State-related acts triggering the State’s personal jurisdiction over nonresidents. (Cf., CPLR 302 [a] [1], [2], [4].) CCA 404 (a) is clearly a provision designed to protect defendants, not one which specifies the types of actions that *152 the court can adjudicate and the remedies that the court can grant. (Compare, CCA art 4, with art 2, and NY Const, art VI, § 15.) It is therefore appropriately classified as a subset of personal jurisdiction, not subject matter jurisdiction (see, Gager v White, 53 NY2d 475; Maloney v Rincon, 153 Misc 2d 162), as recognized by the statute’s drafters. A fortiori, the Civil Court is not empowered to exercise the full State-wide personal jurisdiction of the Supreme Court.
Based on the parties’ submissions, which do not pose a triable factual question, plaintiff’s claim is not embraced by CCA 404. Plaintiff’s claim does not arise from any New York City-related act of defendant. She did not reside, transact business, contract to supply goods or services, commit a tortious act or own or use any real property in the City of New York.
D. Direct Estoppel
Irrespective of the appropriateness of the CPLR 325 (d) order, plaintiff is estopped from arguing that this action can be entertained by the Civil Court. Plaintiff previously had a full and fair opportunity to litigate the identical jurisdictional issue. After a fact-finding hearing held in the prior Civil Court action, Judge Arber decided it adversely to plaintiff. (See, Spinnell v Doris L. Sassower, P. C, supra.) The rarely encountered common-law doctrine of direct estoppel precludes him from litigating it anew. Direct estoppel is a species of issue preclusion that prevents a party from relitigating the same issue already determined against that party in a prior lawsuit on the same claim.[2] (Restatement [Second] of Judgments § 27; Weinstein-Korn-Miller, CPLR Manual § 25.01 [Chase 2d ed 1980]; Siegel, NY Prac §443, at 672 [2d ed].) It is of no significance, in this context, that plaintiff apparently sued only the corporate defendant in the prior action. Mutuality of estoppel is no longer required for issue preclusion via collateral estoppel (B. R. De Witt, Inc. v Hall, 19 NY2d 141); a fortiori, it should not be required for a direct estoppel.
In contrast, the jurisdictional issue at bar was neither raised nor litigated before Judge Grossman; thus it was not determined by the Supreme Court transfer order. Consequently, neither the law of the case doctrine nor any estoppel *153 theory bars defendant from asserting the jurisdictional objection here. It is unseemly for plaintiff to suggest otherwise, particularly since he neglected to inform Judge Grossman of Judge Arber’s adverse decision on this issue.
It is immaterial here that defendant did not specifically move to dismiss on the direct estoppel; she did not thereby waive its protection. CPLR 3211 (a) (5) uses "collateral estoppel” and "res judicata” genetically to mean all varieties of issue preclusion and claim preclusion. CPLR 3211 (e) provides that such an objection is waived unless "raised either by * * * motion or in the responsive pleading”; it does not require that it be separately enumerated. It was sufficient that defendant raised the issue by citing Judge Arber’s decision in support of her motion under CPLR 3211 (a) (8), thereby giving plaintiff adequate notice.
II
An objection to the Civil Court’s territorial jurisdiction, like any other objection to personal jurisdiction, can be waived. (See, Meyers v American Locomotive Co., 201 NY 163; Haas v Scholl, 68 Misc 2d 197.) Plaintiff has not met his burden of showing that defendant waived her long-standing objection to this court’s jurisdiction. Given the convoluted procedural history of this litigation and the complicated ministerial acts required for transfer, it is clear that defendant’s motion was timely,[3] and that her jurisdictional defense was preserved, when she served this motion in November 1991. (See, CPLR 3211 [e].)[4] She did not act inconsistently with her position, despite plaintiffs assertion to the contrary. Defendant’s appearance and answer in the Supreme Court action did not prospectively waive the Civil Court’s limited territorial jurisdiction. Appearance in one court is not an automat consent to a subsequent transfer to any other court. Indeed, both parties understand that the Civil Court was not the *154 proper forum, and thus could not have reasonably expected the transfer. After transfer, defendant’s initial failure to seek a stay while moving to dismiss was ill-considered; it did not waive her jurisdictional objection.
Ill
This court lacks power to. return the action to the Supreme Court. The Civil Court is a court of limited jurisdiction. It has no inherent transfer power and has not been given, by Constitution or statute, the power to effect such a retransfer. (See, NY Const, art VI, §§ 15, 19; CPLR 325.) Such power is not incidental, i.e., it does not necessarily and automatically flow from the jurisdiction specifically granted; it thus cannot be assumed. (See, CCA 212; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 212, at 92.) Only the Supreme Court has general power to remove a case from the court where it was mistakenly brought, to then place it in the proper court. (See, CPLR 325 [a].) Similarly, the Supreme Court, or another court having adequate jurisdiction, can, on motion, remove a case from a lower court if it appears the lower court does not have the jurisdiction required to grant the relief sought. (CPLR 325 [b].) Thus, the Supreme Court can entertain a motion to retransfer to itself a case originally brought in the Supreme Court, which had been transferred downward prior to the realization that the lower court was an inappropriate forum. (See, Huston v Rao, 74 AD2d 127; Hornung v Mucci, 52 AD2d 904.)
The Constitution specifically prohibits the Civil Court from effecting such a retransfer, even of a case over which the Civil Court lacks jurisdiction. (NY Const, art VI, § 19 [f].) The framers wisely recognized that permitting lower courts to return erroneously transferred cases would only compound the embarrassment. It would be as unproductive as it would be unseemly for courts to engage in an interminable ping-pong match, transferring and retransferring cases between them. (See, Friedman v Strand, 203 Misc 170, supra.) Conversely, the constitutional provision prohibiting retransfer does not authorize the Civil Court to adjudicate the merits of transferred cases over which it lacks jurisdiction. Neither does it bar the Civil Court from adjudicating jurisdiction. (NY Const, art VI, § 19 [f].)[5]
*155 CCA 306 states: "The bringing of an action or proceeding in the wrong county shall not be deemed a jurisdictional defect, but the court may * * * transfer * * * to a proper county.” This provision is inapplicable here. It is not a jurisdictional grant, and does not authorize the Civil Court to transfer this case to a court in Westchester County. It is a change of venue provision only. Venue presumes jurisdiction. Only a court having both subject matter and personal jurisdiction can change the venue of an action pending in one county branch to another county branch of the same court. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 306, at 111-113.) Even if the Civil Court had jurisdiction of the instant case, it could not transfer it to a different court under the guise of a change of venue. (See, Fountainhead Caterers v Peck, 42 Misc 2d 330; Roseman v McAvoy, 92 Misc 2d 1063.)
This court is therefore constrained to dismiss this action.[6]
CONCLUSION
The defendant’s motion to dismiss for lack of personal jurisdiction is accordingly granted. This action is hereby ordered dismissed without prejudice to timely commencement of a new action in any court of appropriate jurisdiction in Westchester County.
The motion and cross motion seeking costs and sanctions are denied. Given the conduct of each party, neither is entitled to costs. Under the unique circumstances of this case, the *156 court declines, in its discretion, to impose sanctions at this time. (See, 22 NYCRR 130-1.1.)
Plaintiffs motion to restore the action to the inquest calendar, and defendant’s motion for pendente lite relief, are both denied as moot.

. The notice of motion is signed "Doris L. Sassower, pro se” and does not specify that the motion is being brought on behalf of both named defendants; contextually, however, it is clear from the motion papers that Sassower seeks dismissal of the entire action against both herself as an individual and the professional corporation. Similarly, plaintiff’s papers treat the motion, and the jurisdictional objection, as applying to both Sassower and the professional corporation. Each side, however, alternates in usage between "defendants” and "defendant”, apparently used collectively. Moreover, given Sassower’s indefinite suspension from the practice of law, the current status of the professional corporation is unclear. Accordingly, the court will use "defendant” to denote Sassower in both her individual and corporate capacities. While a suspended attorney may not represent another party during the period of her suspension, she may appear pro se in her individual capacity, and pro se as the president of the professional corporation. Thus, because plaintiff has not raised any objection to Sassower speaking on behalf of the professional corporation (as distinguished from holding herself out as an attorney or practicing law under the aegis of a professional corporation), and because pro se appearance on behalf of the professional corporation does not appear to contravene the suspension order, it would be improper to ignore the parties’ mutual assumption that the instant motion applies to both Sassower and Sassower, P. C.; moreover, it would be unfair to require Sassower to hire separate counsel to represent a dormant or defunct professional corporation when Sassower is the real party in interest. (See, CPLR 321 [c]; see also, Austrian, Lance & Steward v Hastings Props., 87 Misc 2d 25.)

. Collateral estoppel bars relitigation of an issue already determined adversely to a party in a prior action concerning a different claim. (See, Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304 [Cardozo, J.].) The term is frequently used broadly, as a synonym for claim preclusion.

. Until the entered transfer order and file were finally received from Supreme Court, a Civil Court index number assigned, a file opened, the case calendared by the clerk, and the parties notified, motion practice in the Civil Court would have been futile. A motion would have been premature unless the action was actually pending in the Civil Court; a logistical nightmare would have resulted had the motion been brought before the clerk completed all necessary ministerial acts.

. Defendant therefore could have attended in Trial Part I on any of the subsequent dates without fear that her presence would have been deemed a jurisdiction-conferring appearance. (CPLR 320 [b]; 3211 [e].)

. Plaintiff contends that this court would be arrogating to itself appel *155 late powers if it were not to accept the CPLR 325 (d) transfer and try the action. Unterberg v Scarsdale Improvement Corp. (128 Misc 2d 873), on which plaintiff relies, is distinguishable from the case at bar. The Unterberg court found that neither party had objected to the lower court’s jurisdiction and thus waived any objection. The Unterberg court found that the lower court incorrectly raised an objection to personal jurisdiction sua sponte. In contrast, the defendant timely asserted her objection twice: first, before Judge Arber, in the prior action; and second, in the instant motion. It would be improper for this court to shirk its duty to decide a properly raised jurisdictional objection; it would be unethical for this court to proceed on the merits when it knows that it lacks jurisdiction.

. Neither side sought reargument of the CPLR 325 (d) transfer order. Neither side has moved in the Supreme Court for retransfer or sought a stay of this action for the purpose of moving for retransfer in the Supreme Court. (See, CPLR 326 [a].) Under all the circumstances, it would be inappropriate for this court, sua sponte, to grant a stay of dismissal to permit a retransfer motion to be brought in the Supreme Court.