MOSCOWITZ, Plaintiff,

v.

Lee BROWN, NYC Police Dept., David Dinkins, NYC, Joseph Fernandez, Thomas Ryan, NYC Board of Educ., Defendants.

No. 92 Civ. 2940 (LAP).

United States District Court,
S.D. New York.

May 3, 1994.

Sergio Linietsky, Forest Hills, NY, for plaintiff.

Katherine Winningham, Asst. Corp. Counsel, City of New York Law Dept., New York City, for defendants.

## ORDER OF DISMISSAL

PRESKA, District Judge.

Defendants move to dismiss the Third Amended Complaint without leave to replead pursuant to Fed.R.Civ.P. 8(a)(2), (e)(1) and, in the alternative, Fed.R.Civ.P. 12(b). By Order dated February 7, 1994, counsel for both parties were notified that the 12(b)(6) motion was converted to a motion for summary judgment on certain specified claims, because matters outside the pleadings were submitted. For the reasons hereinafter stated, the motion to dismiss and the motion for summary judgment are granted.

### Background

This action was commenced *pro se* on April 23, 1992. At the initial pretrial conference held on November 12, 1992, *pro se* plaintiff was ordered to file an amended complaint, as the original complaint failed to meet the requirements of Fed.R.Civ.P. 8. The first amended complaint was filed on January 6, 1993. After the next pretrial conference, the court issued an order on January 20, 1993 striking pages 177 to 201 of the amended complaint pursuant to Fed.R.Civ.P. 12(f) and granting *pro se* plaintiff leave to file a second amended complaint. Plaintiff was now rep-

resented by counsel and has been up to the present. The second amended complaint was filed on March 15, 1993. The case was reassigned to this Judge on March 26, 1993. Finding that the complaint still failed to meet the requirements of Rule 8, this Court issued an order on April 8, 1993 again granting plaintiff leave to file a third amended complaint. The Third Amended Complaint was filed on April 23, 1993, and defendants move to dismiss this complaint.

Plaintiff, a former New York City police officer, was dismissed from the force on January 14, 1991. Memorandum of Law in Support of Defendants' Motion to Dismiss at 3 ("Defendants' Mem."). Plaintiff subsequently obtained employment from the Board of Education of the City of New York and was fired shortly thereafter. Defendants' Mem. at 4. Plaintiff's demands for relief are based on the following accusations, among others: religious discrimination; harassment; termination without due process of law; retaliation infringing on free speech rights; failure to issue a gun permit; false arrest; surveillance of plaintiff in the United States and Israel by the New York City Police Department's ("NYPD") Intelligence Division; malicious prosecution and abuse of process; defamation; personal injury as a result of gang warfare that occurred on a "pre-arranged" assignment by the NYPD; insider trading, prostitution, sexual exploitation and narcotics at Goldman Sachs & Co. ("GSC") and the NYPD, which, according to plaintiff, is "an effective subsidiary" of GSC; and violation of freedom of information rights.

Plaintiff's claims are numerous—he alleges civil rights violations under Title VII, 42 U.S.C. §§ 2000e *et seq.;* constitutional violations of his rights under the First, Second, Fourth and Fourteenth Amendments; violation of his rights under the Freedom of Information Act; and various state law claims. In addition to monetary relief, reinstatement and back pay, plaintiff seeks a declaratory judgment as to his rights, a permanent injunction restraining defendants from maintaining a discriminatory policy against Orthodox Jewish persons and class certification. The class which plaintiff asserts he represents is composed of all Orthodox Jewish persons who are or might be employed by the defendants. It should be noted that the first three complaints did not contain a request for class certification.

*Discussion*

A. Rule 8

■ In pertinent part, Rule 8 provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.Proc. 8(e)(1). The averments should be plain in order to give the adverse party fair notice of the claims asserted and they should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)).

■ Where a complaint fails to meet the requirements of Rule 8, a court may strike those portions that are redundant or immaterial pursuant to Fed.R.Civ.P. 12(f), or it may dismiss the complaint, either granting leave to amend under Fed.R.Civ.P. 15(a) or dismissing outright. *Salahuddin,* 861 F.2d at 42. The court has the discretion to deny leave to amend "and its decision is not subject to review on appeal except for abuse of discretion...." *Id.* (quoting 3 *Moore's Federal Practice* ¶ 15.08[4] at 15–64 (2d ed. 1987)). However, the Second Circuit emphasized that leave to amend "shall be freely given when justice so requires." *Id.* at 42. In this vein and given the preference for adjudication of cases on their merits, the Second Circuit has stated

> it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8.

*Id.* at 42.

■ Notwithstanding, "where leave to amend has been given and the successive

pleadings remain prolix," the court could dismiss the complaint without leave to amend. *Id., see Prezzi v. Schelter,* 469 F.2d 691 (2d Cir.1972) (per curiam), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973) (finding dismissal of prolix and incomprehensible complaint appropriate where amended complaint failed to cure prolixity); *Barsella v. United States,* 135 F.R.D. 64 (S.D.N.Y. 1991) (dismissing prolix, incoherent *pro se* complaint with prejudice where leave to replead had previously been granted); *Chodos v. F.B.I.,* 559 F.Supp. 69 (S.D.N.Y.), *aff'd,* 697 F.2d 289 (2d Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983) (same); *Prezzi v. Berzak,* 57 F.R.D. 149 (S.D.N.Y.1972) (same).

■ In this case, plaintiff has been given leave to replead three times. Notwithstanding, the Third Amended Complaint fails to meet the requirements of Rule 8. Although 154 pages were omitted, it remains "a labyrinthian prolixity of unrelated and vituperative charges." *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).[1] Moreover, unlike *Salahuddin,* 861 F.2d at 42, where leave to replead was granted to a *pro se* plaintiff who submitted a "nonfrivolous original complaint," and unlike the other cases referred to above, plaintiff was not *pro se* when he submitted both the second and third amended complaints. Therefore, for the foregoing reasons, the Third Amended Complaint is dismissed without leave to replead.

In the alternative, plaintiff's claims are barred by the applicable statute of limitations period, for failure to state a claim, or

for failure to demonstrate a genuine issue of material fact as set forth below.

**B. Alternative Grounds for Dismissal**

■ In deciding a motion to dismiss pursuant to Rule 12(b)(6), well-pleaded factual allegations of the complaint must be accepted as true. *See e.g., Square D Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 411, 106 S.Ct. 1922, 1923, 90 L.Ed.2d 413 (1986); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In considering such motions, the complaint shall be read liberally, drawing all inferences in favor of the pleader. *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102. Indeed, the motion to dismiss should be denied "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities,* 748 F.2d 774, 779 (2d Cir.1984). Despite the liberality of this standard, only the "well-pleaded" factual allegations will be taken as true. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Haviland v. J. Aron & Co.,* 796 F.Supp. 95, 97 (S.D.N.Y.1992), *aff'd,* 986 F.2d 499 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1945, 123 L.Ed.2d 650 (1993). Baldly conclusory statements that fail to give notice of the basic events of which the plaintiff complains need not be credited by the court. *Haviland,* 796 F.Supp. at 97; *Duncan v. AT & T Communications,* 668 F.Supp. 232, 234 (S.D.N.Y. 1987) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)).

---

1. For example, one sentence of the Third Amended Complaint submitted by plaintiff's attorney, which does not contain separately numbered paragraphs as required by Fed.R.Civ.Proc. 10(b), reads as follows:

> this complaint also seeks the restitution of the Plaintiff to his employment as Police Officer of the City of New York with full and continuous back pay, pension and restitution for his loss of wages, punitive damages to the Plaintiff by the defendants for the continuous unconstitutional deprivation of rights intentionally instituted by the Defendants, to provide restitution for his class persons which is unduly damaged and perpetuated by the lack of Orthodox Jewish Appearance within the employment of the Po-

> lice Department of the City of New York and effective discrimination therewith where there is an undue disproportionate number of orthodox Jewish Police Officers which barely number less than ten as a result of an Anti-semitic Policy of the City of New York which permeates each and every aspect of law enforcement to detriment and damage of Orthodox Jewish Persons living in the City of New York and has a rippling effect in cases of Anti-Semitic lawlessness which currently cost, have cost, and will cost billions of dollars to the Community at large: to wit the bombing of the World Trade Center and the patent, intentional ignorance of the Murder of a World renown Orthodox Jewish leader: Rabbi Meir Kahane.

Both parties have offered "matters outside the pleadings" in support of or in opposition to this motion. Defendants' Mem., Exs. B–O, T, U; Plaintiff's Response and Answer to Defendants' Motion to Dismiss, Exs. A–K. Rule 12(b) provides that when such matters are presented and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56 and that parties shall be given reasonable opportunity to present all material made pertinent to such a motion. This Court notified counsel in a February 7, 1994 Order that, *inter alia*, the motion to dismiss the Equal Protection and Due Process Clause claims would be treated as a motion for summary judgment.

■ Pursuant to Fed.R.Civ.R. 56(c), a trial judge may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* In determining whether any genuine issue of material fact is presented, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Walther v. Bank of New York*, 772 F.Supp. 754 (S.D.N.Y.1991). However, once the moving party has met its initial burden of demonstrating the absence of a material issue of fact "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

#### 1. Title VII

Plaintiff brings this action, *inter alia*, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that defendants discriminated against him on the basis of religion. Third Amended Complaint at I. Defendants argue, *inter alia*, that the Title VII claim should be dismissed as time-barred, or, in the alternative, dismissed as to certain defendants for failure to name these defendants as respondents in the EEOC complaint.

■ To be timely, a Title VII claim must be filed in federal court within 90 days of receipt of the "right-to-sue" letter. 42 U.S.C. § 2000e–5(f)(1); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149–50, 104 S.Ct. 1723, 1724–25, 80 L.Ed.2d 196 (1984). Failure to comply with this time requirement will result in dismissal of the complaint. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Sheehan v. Purolater Courier Corp.*, 676 F.2d 877, 881 (2d Cir. 1981), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Brown v. Enzyme Dev. Div. of Biddle Sawyer Corp.*, 780 F.Supp. 1025, 1026 (S.D.N.Y.1992).

■ Plaintiff had 90 days from receipt of the EEOC right-to-sue letter to file this Title VII action. In a Title VII case brought by a *pro se* plaintiff, the Second Circuit stated that in the absence of a recognized equitable consideration, even one day over this 90–day period would be too late. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984) (dismissal of *pro se* complaint filed 97 days after receipt) (quoting *Rice v. New England College*, 676 F.2d 9, 11 (1st Cir.1982)); *see also, Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 1724 n. 1, 80 L.Ed.2d 196 (1984) (dismissing *pro se* complaint for failure to file within 90 days, stating "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

Plaintiff's right-to-sue letter is dated January 17, 1992. Plaintiff alleges in the most recent Complaint that he received this letter on January 17, 1992. Third Amended Complaint at II. However, in a prior Complaint, he alleged receipt of the letter on January 23, 1992. Second Amended Complaint at 3. Under Fed.R.Civ.P. 6(e), the presumed date of receipt is January 20, 1992, or three days after January 17.

Construing the facts in a light most favorable to plaintiff, *viz.*, that plaintiff received the letter six days after it was sent by certi-

fied mail, this Court will consider January 23, 1992 as the date of receipt. Plaintiff filed this Title VII action on April 23, 1992, which is 91 days after receipt of the right-to-sue letter. Therefore, because plaintiff fails to allege any equitable considerations and because this Court does not discern any, this Title VII action is·dismissed for failure to file within 90 days of receipt of the right-to-sue letter. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149, 104 S.Ct. 1723, 1724–25, 80 L.Ed.2d 196 (1984); *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984).

■ Additionally, as a general rule, one not named in the EEOC complaint may not be sued individually in a later Title VII action. § 2000e–5(f)(1); *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494, 497 (S.D.N.Y.1989) (citing *Alcena v. Raine,* 692 F.Supp. 261, 269 (S.D.N.Y.1988)). An exception exists when there is "substantial identity" between the party named in the EEOC charge and the unnamed individual defendants, and the latter had actual notice that their individual conduct was being investigated. *Giuntoli,* 726 F.Supp. at 498; *Allen v. Colgate–Palmolive Co.,* 539 F.Supp. 57, 69 (S.D.N.Y.1981).

■ The NYPD was the only respondent named in the EEOC complaint, and there is no allegation that Dinkins, Fernandez, Ryan and the Board of Education had "actual notice" that their conduct was being investigated. Furthermore, these individuals do not enjoy "substantial identity" with the NYPD. *Giuntoli,* 726 F.Supp. at 498. Therefore, in the alternative, the Title VII charges against defendants Dinkins, Fernandez, Ryan and the Board of Education are dismissed for failure to name these individuals in the EEOC complaint.

### 2. Section 1981 Claim

■ Plaintiff states that jurisdiction for his action is based on, *inter alia,* 42 U.S.C. § 1981. Third Amended Complaint at 15. Presumably, this claim is based on plaintiff's dismissal from the NYPD and the Board of Education. Each dismissal will be discussed separately. Section 1981 provides that all persons have the same right to make and enforce contracts as is enjoyed by white persons. 42 U.S.C. § 1981(a). It has been held that Section 1981 affords protection to Orthodox Jewish persons. *LeBlanc–Sternberg v. Fletcher,* 781 F.Supp. 261, 267 (S.D.N.Y.1991) (citing *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 618, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987)).

The Supreme Court recently held in the context of a Section 1981 action that the Civil Rights Act of 1991, which took effect on November 21, 1991, has no retroactive effect. *Rivers v. Roadway Express,* —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). At the time plaintiff was terminated from the NYPD, January 14, 1991, claims regarding termination of a contract were not actionable under Section 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Patterson v. Intercoast Management of Hartford,* 918 F.2d 12 (2d Cir.1990), *cert. denied,* 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81; *Whitfield v. Forest Elec. Corp.,* 772 F.Supp. 1350 (S.D.N.Y. 1991). Moreover, this Court fails to discern any other theory for a cause of action based on Section 1981 alleged in the Complaint. Therefore, plaintiff's Section 1981 claim against the NYPD for his termination is hereby dismissed for failure to state a cause of action.

■ Under the amended Civil Rights Act, "make and enforce contracts" includes the termination of contracts, and therefore a claim of discriminatory discharge could arise under Section 1981. 42 U.S.C. § 1981 (1993). Plaintiff may assert a Section 1981 cause of action based on his termination by the Board of Education, which occurred after November 1991. However, according to the plain language of Section 1981, plaintiff's claim would have to be based on a contractual relationship with the Board of Education, and there is no allegation of such a relationship. *See generally, Krulik v. New York City Bd. of Educ.,* 781 F.2d 15, 23 (2d Cir. 1986). The terms of plaintiff's employment with the Board of Education was governed by N.Y.Civ.Ser.Law § 65. Under this section, plaintiff's employment with the Board were terminable at will.

Moreover, plaintiff fails to specifically allege that his termination by the Board of Education was discriminatory. Third Amended Complaint at 13. Instead, plaintiff alleges that the Board of Education "unduly fired the Plaintiff" because of "pressure provided by the Police Department." *Id.* at 12. Accordingly, plaintiff's claim for a Section 1981 violation against the Board of Education, if any, is also dismissed for failure to state a claim.

### 3. Section 1983 Claims

The Second Circuit recently explained that "a Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Gierlinger v. New York State Police,* 15 F.3d 32 (2d Cir.1994); *see also, Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994) (citing *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199 (6th Cir.1984)); *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 579 (2d Cir.1989); *Berl v. County of Westchester,* 849 F.2d 712 (2d Cir.1988). In the instant case, plaintiff asserts his Section 1983 claim under the First and Second Amendments, the Due Process Clause and the Equal Protection Clause.[2] Third Amended Complaint at 22, 18, 19, respectively. To the extent plaintiff asserts "cognizable violations of these Constitutional provisions," these claims will not be dismissed. *Saulpaugh,* 4 F.3d at 143.

### (i) First Amendment Claim

 A public employer cannot discharge or retaliate against an employee for the exercise of his free speech right. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 780 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). In order to state a cognizable violation of his First Amendment rights, plaintiff must plead that (1) the speech for which he was terminated was constitutionally protected, and (2) the speech at issue was the motivating factor in the decision to terminate him. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The Supreme Court in *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), stated that the speech must involve a matter of public concern. Where the complaints of discrimination are "personal in nature and generally related to [the employee's] own situation," there is no violation. *Saulpaugh,* 4 F.3d at 143 (citing *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991)).

 The portion of the Third Amended Complaint that addresses the First Amendment claim states that "[w]hile the Plaintiff was a Police Officer, the [NYPD] unduly pressured the Plaintiff against expressing himself to the Press as an Orthodox Jewish Member of the Force." *Id.* at 22. The Third Amended Complaint provides more detail where it alleges that during the course of his employment at the NYPD, plaintiff was a columnist for the Jewish Press. It asserts that the NYPD

**2.** Nowhere in the Third Amended Complaint does plaintiff allege a violation of the "Equal Protection Clause." However, construed in a light most favorable to plaintiff, the facts alleged could set forth such a cause of action, as he alleges religious discrimination. Therefore, the Court will address the viability of this claim. Neither does the Third Amended Complaint allege a violation of the "Fourth Amendment" for malicious prosecution or false arrest. However, in his response to the motion to dismiss, plaintiff asserts that his case has a "Fourth Amendment Basis." Plaintiff's Response to Defendant's Motion to Dismiss at 8. Even construing the facts in a light most favorable to plaintiff, there is no

Section 1983 claim based on the Fourth Amendment. This claim is based on plaintiff's arrest by the New York City Transit Authority ("NYTA"). The NYTA is a public benefit corporation distinct from the NYPD and is not a defendant in this action. *See* N.Y.Pub.Auth.Law §§ 1200, *et seq.; Reape v. Gunn,* 154 A.D.2d 682, 546 N.Y.S.2d 887 (2d Dep't 1989), *appeal dismissed,* 75 N.Y.2d 1004, 557 N.Y.S.2d 310, 556 N.E.2d 1117 (1990). Plaintiff also fails to allege the existence of an agreement between the NYPD and the NYTA that could form the basis of a conspiracy claim under 42 U.S.C. § 1985. *See Powell v. Workmen's Compensation Bd.,* 327 F.2d 131 (2d Cir.1964).

gave critical invectives by high ranking officers regarding plaintiff's articles written in the Jewish Press, press stories written on plaintiff's volunteer social service work for the Jewish Poor, his symbolic speech: to wit; his wearing of his religious articles....

The content of this speech, plaintiff's volunteer work and his wearing of religious articles, does not involve matters of public concern. Instead, the speech is personal in nature and, insofar as it concerns his wearing of religious articles, relates to his own situation within the NYPD. *Ezekwo*, 940 F.2d at 781.

The Third Amended Complaint additionally asserts that when plaintiff gave a radio interview, expressing his views about the NYPD's anti-Semitism, he was arrested in direct retaliation for this interview in violation of his First Amendment rights. *Id.* at 22–23. The arrest that plaintiff refers to was executed by the New York City Transit Authority on March 29, 1993. Third Amended Complaint at 18. Plaintiff was terminated by the NYPD on January 14, 1991. This speech, which could be construed as addressing matters of public concern, seems to have occurred at least two years after his termination from the NYPD and at least six months after his termination from the Board of Education. Plaintiff fails to state a claim under the First Amendment because the speech at issue, the radio interview, could not have been the motivating factor in the decision to terminate him. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.[3]

Plaintiff fails to plead a violation of his First Amendment rights under Section 1983 because he either fails to allege protected speech or fails to allege an adverse employment action motivated by his exercise of his free speech rights.

### (ii) Second Amendment Claim

 Plaintiff also seeks relief for the "denial of gun permits in violation of the 2nd amendment of the United States Constitution in an arbitrary manner...." Third Amend-

ed Complaint at 18. In *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Supreme Court was faced with a Second Amendment attack on the conviction of a defendant for interstate transportation of a shotgun in violation of the National Firearms Act of 1934. The Court rejected the argument, explaining that

> [i]n the absence of any evidence tending to show that possession or use of a [shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument....

*Id.* at 178, 59 S.Ct. at 818; *Lewis v. United States*, 445 U.S. 55, 66, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980) (legislative restrictions on the use of firearms do not trench upon any constitutionally protected liberties).

Revocation of Plaintiff's gun permit does not implicate the preservation or efficiency of a well-regulated militia. Therefore, plaintiff fails to state a claim under the Second Amendment.

### (iii) Due Process Clause Claims

Plaintiff also alleges a Section 1983 claim for violation of his due process rights in his dismissal from both the NYPD and the Board of Education. Third Amended Complaint at 2, 3, 19–22. Termination from defendant NYPD and defendant Board of Education, and the concordant implication of plaintiff's due process rights will be discussed separately.

 As to the termination from the NYPD, defendants argue that plaintiff's due process claim is precluded by the doctrine of collateral estoppel, because plaintiff had a full and fair opportunity to litigate the circumstances of his dismissal from the NYPD in a state Article 78 proceeding. Defendants' Mem. at 22–25. The doctrine of collateral estoppel under New York law "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a

---

**3.** Inasmuch as plaintiff asserts retaliatory conduct by the Transit Authority in violation of his First Amendment rights, Third Amended Complaint at 22, the Transit Authority is not a defendant in this action and is a separate entity from the NYPD.

prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same." *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (Ct.App.1984); *Burgos v. Hopkins,* 14 F.3d 787 (2d Cir.1994). Collateral estoppel is applicable where (1) there is "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) there was "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969); *Burgos v. Hopkins, supra.*

■ Plaintiff challenged the proceedings resulting in his dismissal from the NYPD in a state Article 78 proceeding on the grounds that the decision to terminate him was "arbitrary, capricious, an abuse of discretion, contrary to the weight of evidence adduced at the disciplinary hearing, and excessive and unduly severe punishment." Verified Petition to the Supreme Court of the State of New York Sworn to by Gary Moscowitz on February 4, 1991 ¶ 9, Defendants' Mem. at Ex. H. On October 1, 1992, the New York State Supreme Court, Appellate Division, First Department, unanimously confirmed the determination by the Police Commissioner dismissing plaintiff from the NYPD, denied plaintiff's petition and dismissed the Article 78 proceeding. Defendants' Mem. at Ex. I. Plaintiff did not appeal that decision. Plaintiff's Answer to Defendant's Motion to Dismiss at 2.

Plaintiff is precluded under the doctrine of collateral estoppel from relitigating against defendants in this action issues of fact or law that were clearly raised and decided against him in the Article 78 proceeding. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 480–85, 102 S.Ct. 1883, 1896–99, 72 L.Ed.2d 262 (1982); *Burgos,* 14 F.3d 787. This is so even though not all defendants named in this action were parties to the earlier litigation, as the doctrine of mutuality of estoppel no longer prevails in New York. *B.R. DeWitt, Inc.*

*v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 601, 225 N.E.2d 195, 198 (Ct.App.1967); *see also, Spinnell v. Sassower,* 155 Misc.2d 147, 589 N.Y.S.2d 230, 234 (S.Ct.1992) (mutuality of estoppel no longer required for issue preclusion); *Murphy v. Gallagher,* 761 F.2d 878, 883 (2d Cir.1985) (same); *Blonder–Tongue Laboratories v. Univ. of Illinois Foundation,* 402 U.S. 313, 321–328, 91 S.Ct. 1434, 1439–1443, 28 L.Ed.2d 788 (1971) (recognizing the erosion of the mutuality rule).

Plaintiff alleges that the hearing which resulted in his termination from the NYPD did not provide him with due process in that, *inter alia,* he was denied the right to bring witnesses, Third Amended Complaint at 3, denied relevant discovery material, denied the right to question witnesses, and denied the right to listen to internal affairs interrogation tapes (which had been tampered with) until the middle of the hearing. *Id.* at 11–12. Comparison of the record in the Article 78 proceeding with plaintiff's Third Amended Complaint reveals that the acts constituting the alleged deprivation are essentially identical to those raised in plaintiff's Article 78 proceeding. *See* Defendants' Mem., Ex. E, Letter to Police Commissioner (alleging that the trial was a "Kangaroo Court," that he was denied key witnesses and various discovery material).

■ The Article 78 proceeding provided plaintiff with a "full and fair opportunity" to litigate these issues in state court, satisfying the second prong of the test for the applicability of collateral estoppel. *See Campo v. New York City Employees' Retirement System,* 843 F.2d 96 (2d Cir.) (finding New York's Article 78 proceeding provides adequate review of administrative hearing determinations, comporting with due process), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Cepeda v. Coughlin,* 785 F.Supp. 385, 389 (S.D.N.Y.1992). Therefore, plaintiff's Due Process Clause claim against the NYPD is dismissed as relitigation of this issue is precluded under the doctrine of collateral estoppel.[4]

---

4. Plaintiff may also attempt to state a claim against the NYPD for deprivation of his liberty interest without due process of law, due to the NYPD's alleged defamation. He alleges "continuous harassment by the Police Department to the present date which includes forcing him to be

■ Furthermore, this Court is precluded as a matter of law from finding a deprivation of plaintiff's due process rights because plaintiff sought meaningful review of the NYPD's decision in the state judicial system through the Article 78 proceeding. *Campo v. New York City Employees' Retirement System,* 843 F.2d 96 (2d Cir.) (finding New York's Article 78 proceeding provides adequate post-deprivation remedy that comports with due process), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (if state law provides adequate post-deprivation remedy, deprivations of property attributable to unauthorized state conduct do not violate procedural due process)) (other citations omitted); *Orange Lake Assoc. v. Kirkpatrick,* 825 F.Supp. 1169, 1179 (S.D.N.Y.1993) ("an article 78 hearing was available in state court and there can be no procedural due process violation"), *aff'd,* 21 F.3d 1214, 1221 (2d Cir.1994). Therefore, plaintiff's Due Process Clause claim against the NYPD is alternatively dismissed for failure to state a claim as a matter of law.[5]

The extent of plaintiff's due process claim against the Board of Education contained in the Third Amended Complaint is as follows: "provide redress ... for the Defendants' retaliation by the unlawful, arbitrary and devoid of due process of law undue dismissal of the Plaintiff from the ... Board of Education of the City of New York...."

■ The guarantees of procedural due process apply when a person is deprived of a liberty or property interest protected by the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). When protected interests are implicated, procedural due process requires "some kind of hearing." *Id.* Yet, property interests "are not created by the Constitution." Such interests "are defined by existing rules ... that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709. A public employee's federal constitutional claim depends on his having a property right in continued employment. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

■ Accordingly, the validity of plaintiff's claim depends upon the terms of his employment with the Board of Education. Plaintiff was hired by the Board as a provisional employee. Defendants' Mem., Exs. K, M. By its terms, a provisional appointment is a temporary position. N.Y.Civ.Serv.Law § 65(2). Provisional employees have no expectation of continued employment and therefore have no property right to a hearing prior to termination. *Preddice v. Callanan,* 69 N.Y.2d 812, 513 N.Y.S.2d 958, 506 N.E.2d 529 (1987) (provisional employees may be terminated at any time); *Ranus v. Blum,* 96 A.D.2d 1144, 467 N.Y.S.2d 740 (4th Dep't 1983) (provisional employee has no property right to a hearing prior to termination); *Soljan v. Bahou,* 60 A.D.2d 946, 401 N.Y.S.2d 593 (3d Dep't 1978) (provisional appointees are not subject to the full panoply of civil service protection). Plaintiff's Due Process Clause claim against the Board of Education is therefore dismissed for failure to state a claim.

---

fired from other employments unduly such as from the Board of Education of the City of New York...." Third Amended Complaint at 2.

Nonetheless, plaintiff fails to state a claim because "the defamation complained of must occur 'in the course of the termination of employment.'" *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 144 (2d Cir.1993). The *Saulpaugh* court explained that if the defamation occurred after termination from defendant's employ, then the defamation was "'merely a tort, cognizable at state law, but not a constitutional deprivation.'" *Id.* (quoting *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S.

816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989)). In this case, plaintiff clearly alleges that the defamation occurred after his termination from the NYPD while he was employed by the Board of Education.

5. This ground for dismissal also applies to plaintiff's due process claim against the Board of Education. Plaintiff could have sought review of the Board's decision to terminate him through the state Article 78 proceeding. *Parratt,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917. However, the Court dismisses this claim on other grounds as discussed below.

#### (iv) Equal Protection Clause Claim

Plaintiff asserts a claim against the City of New York, the Board of Education and the NYPD, as well as against the individual defendants. The standard for plaintiff's claim against the individual defendants and the municipal defendants is different, as set out below. Furthermore, since plaintiff fails to allege any facts in support of his discrimination charge against the Board of Education, the Court will treat defendants' motion regarding the equal protection claim against the Board as a motion to dismiss rather than a motion for summary judgment.

 In order to assert a cause of action for municipal liability against the defendants, plaintiff must prove (1) the existence of a municipal policy or custom, and (2) "a causal connection ... between the policy [or practice] and the deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 n. 8, 105 S.Ct. 2427, 2436 n. 8, 85 L.Ed.2d 791 (1985)). Plaintiff must demonstrate that defendants' actions were caused by a specific and identifiable official policy, *Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), or that the challenged conduct directly resulted from a determination "properly made by [the] government's authorized decision-makers." *Pembauer v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

 The Third Amended Complaint contains allegations of a policy by the NYPD and the Board of Education to discriminate against Orthodox Jewish Persons. Plaintiff seeks to restrain defendants "from maintaining a policy, practice, custom or usage of discriminating against the plaintiff and other Orthodox Jewish persons in this class because of a patent policy of Anti–Semitism...." Third Amended Complaint at 13.

As regards the NYPD,[6] other than citing to alleged discriminatory acts (intelligence surveillance, Third Amended Complaint at 3, religious slurs, Third Amended Complaint at 4), there are no other allegations of a policy. Conclusory allegations are not sufficient to demonstrate a policy by the NYPD to discriminate. *Bates v. New York City Transit Authority,* 721 F.Supp. 1577 (E.D.N.Y.1989).

In moving for summary judgment on the ground that the NYPD does not have an official policy of discriminating against Orthodox Jewish Persons, defendants offer a letter from the Commanding Officer of the Recruitment Section of the NYPD regarding the recruitment of Jews, as well as a Section from the General Regulations of the Patrol Guide. Defendants' Mem., Ex. U. The Commanding Officer's letter sets forth, *inter alia,* the religious holidays observed by Orthodox Jews and discusses recruitment and accommodation of Orthodox Jews. The Patrol Guide states that officers are prohibited from "using discourteous or disrespectful remarks regarding another person's ethnicity, race, *religion,* gender or sexual orientation." *Id.* (emphasis added). These two materials demonstrate that the official policy and practice of the NYPD is to encourage recruitment of Jewish police officers and to accommodate Orthodox Jewish police officers on the Sabbath and Jewish holidays.[7]

Upon this showing by defendants that the NYPD does not have a policy or practice of discriminating against Orthodox Jewish persons, the burden shifts to plaintiff to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In his response, plaintiff fails to produce any evidence other than conclusory allegations. No material issue of fact is presented as to whether the NYPD follows an official policy or practice of discrimination against Orthodox Jews. Therefore, summary judgment on the Section 1983 claim

---

6. The equal protection claim against the City of New York is discussed in conjunction with the claim against the NYPD.

7. Plaintiff himself recognizes this policy in the Second Amended Complaint, where he states that the NYPD had an official policy to permit Jewish officers to observe the Sabbath. Second Amended Complaint at 6, 17, 37, 51, 77, 79, 88.

against the municipal defendants based on the Equal Protection Clause is hereby granted to those defendants.

 In his equal protection claim against the Board of Education, plaintiff alleges in a conclusory fashion that "defendants" maintain "a policy, practice, custom or usage of discriminating against the plaintiff." Third Amended Complaint at 13. There are no allegations regarding any policy or practice by the Board of Education specifically (as there are regarding the NYPD), other than the fact that the Board discharged plaintiff. *Id.* Therefore, because plaintiff fails to allege any specific and identifiable official policy by the Board of Education, his equal protection claim against this defendant must be dismissed. *Monell,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035.

 In order to assert a Section 1983 claim against the individual defendants, plaintiff is required to allege personal involvement by these defendants. *Williams v. Smith,* 781 F.2d 319 (2d Cir.1986) (citing *McKinnon v. Patterson,* 568 F.2d 930 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *Brown v. Coughlin,* 758 F.Supp. 876, 888 (S.D.N.Y. 1991). Here, plaintiff alleges that defendant Brown should have known of the acts alleged to have been committed by police officers. Third Amended Complaint at 3-4. Plaintiff does not allege that Brown was apprised of the nature of plaintiff's claims or that he had knowledge of the allegations of religious discrimination by police officers against plaintiff. *Id.* Defendants Dinkins, Fernandez,

and Ryan are not mentioned in the Third Amended Complaint apart from the caption.

Because plaintiff has failed to plead personal involvement or knowledge of the individual defendants Brown, Dinkins, Fernandez, and Ryan, the Section 1983 claims against those individuals based on the Equal Protection Clause contained in the Third Amended Complaint must be dismissed. Because plaintiff has failed to meet his burden of presenting a genuine issue of whether there was an official policy or practice by the municipal defendants causing deprivation of his constitutional rights, summary judgment is granted in favor of the municipal defendants. Finally, because plaintiff fails to allege any identifiable policy of discrimination by the Board of Education, the motion to dismiss this claim is granted.

### C. State Law Claims

Plaintiff also brings various state law claims.[8] Having dismissed the federal claims, it does not appear that the Court has diversity jurisdiction, and therefore the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Grondahl v. Merritt & Harris,* 964 F.2d 1290, 1294 (2d Cir.1992). The state law claims are therefore dismissed without prejudice.

### *Conclusion*

The Third Amended Complaint is hereby dismissed in its entirety without leave to replead under Fed.R.Civ.P. 8.

---

8. Plaintiff's freedom of information claim arises under state law. Plaintiff requests that the Court "[p]rovide redress of the lack of Freedom of Information Rights curtailed to the Plaintiff under the Freedom of Information Act." Third Amended Complaint at 22. Plaintiff alleges that he was denied access to his personal records by the NYPD. *Id.* Plaintiff's claim, if any, does not arise under the Freedom of Information Act, 5 U.S.C. § 552, but under New York's Freedom of Information Law, N.Y.Pub.Off.Law § 84 *et seq.,* or the state common law privilege for official information.

Plaintiff's other state law claims include false arrest and malicious prosecution claims, as well as claims for harassment, abuse of process, defamation and personal injury. The Supreme Court recently decided that substantive due process will not provide the basis for a malicious prosecution claim. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). *See also, Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation does not become a constitutional wrong merely because the offensive conduct was performed by a public official). As discussed above, plaintiff fails to state a cause of action under the Fourth Amendment for his malicious prosecution and false arrest claims. Therefore, plaintiff has no "constitutional peg" upon which to hang a Section 1983 action for the malicious prosecution and false arrest claims, *Albright,* —— U.S. at —— n. 4, 114 S.Ct. at 811 n. 4, and his remedies lie at state law.

In the alternative, the Title VII claims are dismissed with prejudice for failure to comply with the time requirement contained in 42 U.S.C. § 2000e–5(f)(1) and, as to all defendants but the NYPD and Lee Brown, for failure to name these defendants as respondents in the EEOC charge; the Sections 1981 and 1983 claims are dismissed with prejudice for failure to state a claim under Fed.R.Civ.P. 12(b)(6) as to the individual defendants and the Board of Education, and summary judgment on those claims is granted under Rule 56 as to the remaining municipal defendants.[9] The state law claims are dismissed without prejudice.

SO ORDERED.

---

9. Because the federal claims in the Third Amended Complaint have been dismissed, it is not necessary to discuss plaintiff's most recent request in the latest complaint for class certification.