## (February 13, 1976)

■ In the Matter of FRED G. MORITT, Petitioner, v MAURICE H. NADJARI, as Deputy Attorney-General of the State of New York, et al., Respondents.— Proceeding pursuant to CPLR article 78 to prohibit respondents from taking any further proceedings against petitioner under Indictment SPOK 13/1974; cross motion by respondents Carey, Lefkowitz and Polsky to dismiss the petition. Cross motion granted and proceeding dismissed on the merits, without costs or disbursements. Petitioner Moritt's trial is scheduled to take place within the next week in Part 39, of the Supreme Court, Kings County, before respondent Polsky. Petitioner now seeks to enjoin that trial on jurisdictional grounds. Specifically, he urges (1) that respondent Nadjari has recently been divested of jurisdiction to act herein and (2) that respondent Polsky is without legal authority to preside over or conduct any trial in the Extraordinary Special and Trial Term of the Supreme Court. In our view, these claims are totally without merit. As respects respondent Nadjari, petitioner argues that respondent Attorney-General Lefkowitz has divested him of all jurisdiction, with the sole exception of the investigation of certain matters in Bronx County. In support, petitioner relies exclusively upon news releases and articles appearing in the *New York Times* at the end of

December, 1975. From these articles, he has deduced that respondent Lefkowitz implicitly concurred in the attempted dismissal of respondent Nadjari, but simply postponed full termination for six months in order to permit the completion of the pending Bronx County investigations. The Attorney-General's conditional retention is interpreted by petitioner to amount to a direction to respondent Nadjari to limit his activities to the Bronx County investigations for the next six months. Suffice it to say that the authority of respondent Nadjari is not to be determined by reference to the *New York Times*. Respondent Nadjari was initially appointed by Attorney-General Lefkowitz pursuant to Executive Orders 55-59 (9 NYCRR 1.55–1.59), issued by then Governor Rockefeller on September 19, 1972. Those orders retained their effectiveness under the succeeding administrations. Neither Governor Carey nor Attorney-General Lefkowitz has ever issued any order or directive terminating the appointment of respondent Nadjari or in any way limiting his jurisdiction under the original orders. As respects respondent Polsky, the jurisdictional claim is equally deficient. Petitioner's argument has two branches. On the one hand, he argues that Polsky's authority as a jurist is limited to the trial of indictments arising under the Emergency Drug Control Law. This is allegedly so because Polsky was one of the new Court of Claims Judges appointed by the Governor in 1974 under the emergency drug control program. These judgeships were created to meet the expected increase in criminal proceedings under the new strict drug laws (see L 1973, ch 603). According to petitioner, a so-called "603" Judge cannot be deemed an Acting Justice of the Supreme Court pursuant to section 26 of article VI of the State Constitution (dealing with temporary assignments of Judges to other courts) because such status would be inconsistent with the legislative purpose in creating the "603" judgeships and would violate a defendant's constitutional right to be tried by a duly elected Justice of the Supreme Court. The second branch of petitioner's argument is that Judge Polsky's assignment by Administrative Judge Ross to conduct trials of indictments emanating from the Special and Extraordinary Grand Jury at a term appointed by Justice Bartlett contravenes section 27 of article VI of the State Constitution and section 149 of the Judiciary Law, which envision the appointment only by the Governor of an Extraordinary Term and only of a single Justice to preside thereat. In other words, it is petitioner's position that the Executive's power to create terms of the Supreme Court and to assign Justices thereto is strictly limited to the assignment of a single Justice—here Justice Murtagh and his successor, Justice Sandler—to a single Extraordinary Term. Even assuming that there is power to appoint additional Judges and terms, petitioner maintains that this power may not be delegated to Justice Bartlett or Administrative Judge Ross. The fatal flaw in petitioner's contention is that Judge Polsky has not been assigned to preside at an *Extraordinary* Term of the Supreme Court. Rather, the correct state of affairs is as follows: Governor Rockefeller's original Executive Orders (55–59) required the Attorney-General to attend, in person or by deputy, at "an Extraordinary Special and Trial Term of the Supreme Court to be appointed by [the Governor] *and any other term or terms of the Supreme Court"* and "appear before the grand jury drawn for said extraordinary term of said court, and before any grand jury or grand juries which shall be drawn or which shall have heretofore been drawn *for any other term or terms of said court",* for the purpose of conducting proceedings, etc., relating to corrupt acts and to prosecute and handle "all trials at said extraordinary term of court *or at any term of said court* at which any and all indictments which may be found and which may hereaf-

ter be tried" in connection with this requirement (emphasis supplied). Therefore, insofar as is here pertinent, the 1972 executive orders contemplated and authorized the trial of indictments emanating from an Extraordinary Grand Jury at both the Extraordinary Trial Term appointed by the Governor *and* any other term or terms of the Supreme Court. On November 19, 1975, in response to a request by respondent Nadjari for the appointment of additional Judges and terms to assist in the disposition of his cases, Governor Carey amended the aforementioned executive orders to authorize Justice Murtagh "to transfer any actions and proceedings to such other trial terms of the Supreme Court as shall be designated by the State Administrative Judge for such purpose" (Executive Orders 19-23; 9 NYCRR 3.19-3.23). (Justice Sandler has since been similarly empowered [Executive Orders 24–28; 9 NYCRR 3.24–3.28].) Thereafter Justice Bartlett designated several terms of the Supreme Court, encompassing the five counties within the City of New York, as such additional trial parts and *not* as Extraordinary Terms. Administrative Judge Ross, with the approval of Presiding Justices Gulotta and Stevens, then assigned Judges Polsky and Jones, who had previously been designated Acting Justices of the Supreme Court, to preside over these additional, ordinary terms of the Supreme Court, for "the primary purpose of disposing of such matters as are referred thereto by the Justice presiding in the Extraordinary Terms", such assignments to remain in effect "until further order" (see directives 16 and 193 of Administrative Judge Ross, dated January 26, 1976 and December 10, 1975, respectively). The procedure followed here was perfectly proper and was in full accord with relevant constitutional and statutory provisions. Furthermore, it is now well-established that a so-called "603" Judge may properly be assigned, on a temporary basis, to the Supreme Court; that while so assigned, he has all of the powers, duties and jurisdiction of a Justice of the Supreme Court; and that there is no constitutional guarantee or right to be tried on a felony charge before an elected rather than an appointed Acting Supreme Court Justice (see *Matter of Taylor v Sise,* 33 NY2d 357). Admittedly, the *Taylor* case involved the propriety of a "603" Court of Claims Judge presiding as an Acting Supreme Court Justice at the trial of felony narcotics cases, but its language is applicable to the situation at bar; there is nothing in the Constitution or statutes which precludes a "603" Judge from presiding at a nonnarcotics felony trial while temporarily assigned to the Supreme Court. Certainly, the mere fact that the instant assignment of a "603" Judge, otherwise proper, serves a laudable purpose not originally envisioned when the additional judgeships were created, does not compel us to restrict an otherwise unqualified grant of power. Latham, Acting P. J., Cohalan, Margett, Christ and Shapiro, JJ., concur.