Caffrey v North Arrow Abstract & Settlement Servs., Inc. (2018 NY Slip Op 01043)





Caffrey v North Arrow Abstract & Settlement Servs., Inc.


2018 NY Slip Op 01043


Decided on February 14, 2018


Appellate Division, Second Department


Dillon, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 14, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
ANGELA G. IANNACCI, JJ.


2015-06114
 (Index No. 102525/09)

[*1]Maureen Caffrey, etc., respondent, 
v
North Arrow Abstract & Settlement Services, Inc., et al., defendants, Eric Nelson, appellant.



APPEAL from a judgment of the Supreme Court, Richmond County (Philip G. Minardo, J.), dated March 13, 2015. The judgment, insofar as appealed from, upon a decision dated December 5, 2013, made after a nonjury trial, is in favor of the plaintiff and against the defendant Eric Nelson in the principal sum of $115,000.



Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrera & Wolf, LLP, Brooklyn, NY (Michael A. Coscia of counsel), for appellant.
Crawford, Bringslid, Vander, Neut, LLP, Staten Island, NY (Allyn J. Crawford of counsel), for respondent.



DILLON, J.P.


OPINION & ORDER
We address two related issues concerning subject matter jurisdiction that have not previously been addressed by our Court. The first is whether a court with subject matter jurisdiction, which pursuant to CPLR 325(d) has erroneously transferred an action to a lower court lacking subject matter jurisdiction to adjudicate the matter, may retransfer the action to itself after the lower court has already tried the matter and rendered a judgment. The second question is whether, upon a retransfer of the action to a court with subject matter jurisdiction pursuant to CPLR 325(b), the court may adopt the findings of fact and conclusions of law of the lower court and thereupon substitute the lower court's judgment with its own judgment. We answer the first question in the affirmative and the second question in the negative.
I. Facts
This appeal presents an unfortunate and tortured procedural history.
In October 2009, the plaintiff, Maureen Caffrey, individually and as a shareholder of the defendant North Arrow Abstract & Settlement Services, Inc. (hereinafter North Arrow), commenced this shareholder derivative action in the Supreme Court, Richmond County, against North Arrow and the defendant Eric Nelson, to recover damages for, inter alia, corporate mismanagement. The complaint asserted equitable causes of action alleging misappropriation of funds, breach of fiduciary obligations, corporate waste, conversion, the failure to maintain a proper accounting, fraud, and unjust enrichment, and sought injunctive relief and a declaratory judgment. Nelson interposed an answer dated April 20, 2010, denying the material allegations of the complaint.
The action was referred by the Administrative Judge of Richmond County "for assignment to a Judicial Hearing Officer/Court Attorney Referee to conduct a nonjury trial." By order dated August 5, 2011, the Supreme Court, rather than assigning the matter to a judicial hearing officer or referee as directed, sua sponte, transferred the action pursuant to CPLR 325(d) to the Civil [*2]Court of the City of New York for trial. There was no order designating any particular judge of the Civil Court to hear the action as an Acting Justice of the Supreme Court.
By order dated January 9, 2012, the Civil Court denied the parties' respective motions for summary judgment. The order was signed by Hon. Orlando Marrazzo, Jr., as "Judge, Civil Court."
Thereafter, the action was tried without a jury in the Civil Court for 11 nonconsecutive days spanning the course of several months. In a decision dated December 5, 2013, the Civil Court found that Caffrey established her 50% ownership of North Arrow and that Nelson had breached obligations to her, misappropriated funds to himself, and diverted business to another entity which he owned. The Civil Court calculated Caffrey's damages at $115,000 [FN1]. The decision was signed by Judge Marrazzo, in this instance, as "Acting Justice, Supreme Court," which is the first time in the chronology of events that the term "Acting Justice" appears in the case. On January 17, 2014, a judgment was filed in the Civil Court, Richmond County, in favor of Caffrey and against Nelson in the principal sum of $115,000, plus statutory interest, costs, and disbursements, for a total sum of $192,995.21.
Nelson appealed the Civil Court judgment to the Appellate Term for the Second, Eleventh, and Thirteenth Judicial Districts. Nelson argued before the Appellate Term that the judgment was void, as the Civil Court was without subject matter jurisdiction to hear the equitable causes of action alleged in Caffrey's complaint.
During the pendency of Nelson's appeal to the Appellate Term, Caffrey moved by order to show cause in the Supreme Court, Richmond County, to retransfer the action from Civil Court to Supreme Court, pursuant to CPLR 325(b). Caffrey also requested that, upon the retransfer, the Supreme Court vacate the Civil Court judgment and enter, in its place, a Supreme Court judgment consistent with the trial decision of Judge Marrazzo.
In an order entered February 25, 2015, the Supreme Court granted Caffrey's motion, retransferred the action from the Civil Court to the Supreme Court pursuant to CPLR 325(b), and vacated the Civil Court judgment. On March 13, 2015, the Supreme Court entered the judgment appealed from, with updated statutory interest, in the total sum of $205,307.35. The Supreme Court judgment referred to Judge Marrazzo as an "Acting Justice of the Supreme Court" during the dates of the trial. In light of the entry of the Supreme Court judgment, Nelson's appeal of the Civil Court judgment to the Appellate Term was dismissed as academic.
The parties agree that the initial transfer of the action to the Civil Court for trial pursuant to CPLR 325(d) was jurisdictionally erroneous and procedurally improper. The parties dispute whether the Supreme Court had the authority to retransfer the action to itself after the Civil Court judgment had already been entered. They also dispute the authority of the Supreme Court to, in effect, adopt the findings of fact and conclusions of law of the Civil Court trial judge and to concomitantly substitute the Civil Court judgment with a Supreme Court judgment based on the same trial proceeding.
II. Judicial Notice Of Trial Judge's Status
The record on appeal contains no document conferring upon Civil Court Judge Marrazzo the authority of an Acting Justice of the Supreme Court for this case. Nelson argues in his appellate brief, as he had previously argued at the Appellate Term, that the Civil Court was without subject matter jurisdiction to adjudicate the action and render judgment, since Civil Courts generally cannot hear actions sounding in equity. Nelson further argues that the trial judge did not have the authority of an Acting Justice of the Supreme Court, as he expressly issued the order dated January 9, 2012, denying the parties' respective motions for summary judgment, as a "Judge, Civil Court."
In response, Caffrey circumvents the issue of the Civil Court's purported jurisdictional infirmity to hear by instead arguing that any infirmity was cured by the Supreme Court's retransfer of the action to itself under CPLR 325(b) and the subsequent entry of a Supreme Court judgment. Notably, the decision dated December 5, 2013, rendered after trial, was executed by the presiding judge as "Acting Justice, Supreme Court," but at oral argument of this appeal, [*3]neither of the parties' counsel could explain the presence of the Acting Justice designation.
After oral argument of this appeal, this Court contacted the Office of Court Administration (hereinafter OCA) to inquire whether the authority of an Acting Justice of the Supreme Court had been conferred upon Judge Marrazzo in 2012-2014, the years when the action was tried and decided and when the Civil Court judgment was entered. OCA advised that, pursuant to an Administrative Order of the Chief Administrative Judge dated January 5, 2012, Civil Court Judge Marrazzo had, in fact, been designated as an "Acting Justice of the Supreme Court, to serve in the Supreme Court, Thirteenth Judicial District, Civil Term" (Admin Order of Chief Admin Judge of Cts AO/227/2012). The designation was administratively extended for subsequent relevant years. Thus, when Judge Marrazzo denied the parties' motions for summary judgment on January 9, 2012, he had already been designated an Acting Justice of the Supreme Court.
As a general rule, the factual review power of the Appellate Divisions is confined to the content of the record compiled before the court of original instance and does not include matter dehors the record (see CPLR 5526; Flagstar Bank, FSB v Titus, 120 AD3d 469, 470; Brandes Meat Corp. v Cromer, 146 AD2d 666, 667; Mi Suk Buley v Beacon Tex-Print, 118 AD2d 630, 631; Broida v Bancroft, 103 AD2d 88, 93). However, the general rule is not inviolate, as courts may take judicial notice of a record in the same court of either the pending matter or of some other action (see Matter of Currier [Woodlawn Cemetery], 300 NY 162, 170; Matter of Khatibi v Weill, 8 AD3d 485, 485-486; Matter of Allen v Strough, 301 AD2d 11, 18; Ptasznik v Schultz, 247 AD2d 197, 199; Casson v Casson, 107 AD2d 342; Broida v Bancroft, 103 AD2d at 93; Sam & Mary Hous. Corp. v Jo/Sal Mkt. Corp., 100 AD2d 901, 903 [Weinstein, J., concurring], affd 64 NY2d 1107; Schmidt v Magnetic Head Corp., 97 AD2d 151, 158 n 3; Rossbach v Rosenblum, 260 App Div 206, affd 284 NY 745; Jerome Prince, Richardson on Evidence § 30 at 18 [10th ed]). Judicial notice may be taken by a court at any stage of the litigation, even on appeal (see Cooper v Morin, 91 Misc 2d 302, 313 [Sup Ct, Monroe County], mod sub nom 64 AD2d 130, mod 49 NY2d 69; Associated Gen. Contrs. of Am., N.Y. State Ch. v Lapardo Bros. Excavating Contrs., 43 Misc 2d 825, 826 [Sup Ct, Albany County]; 9-R511 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶4511.01).
In Ptasznik, Justice Albert Rosenblatt, writing then for the Appellate Division, Second Department, cautioned that only certain court documents are eligible for judicial notice—that "prior orders or kindred documents" may be judicially noticed, while unauthenticated or unreliable documents that happen to repose in a court's file, such as polygraph test results, are not appropriate for judicial notice (Ptasznik v Schultz, 247 AD2d at 199, citing Matter of Sowa v Looney, 23 NY2d 329; see Matter of Allcity Ins. Co. [Kondak], 66 AD2d 531, 533; People v Singleton, 36 AD2d 725; People ex rel. Bloom v Collins, 277 App Div 21, 23, affd 302 NY 603; cf. Sleasman v Sherwood, 212 AD2d 868, 870).
Nevertheless, a court should not take judicial notice of any court-generated document without affording the parties an opportunity to be heard on whether notice should be taken, and, if so, the significance of its content (see CPLR 4511[a], [b]; cf. Tirado v Miller, 75 AD3d 153, 160). In recognizing the potential centrality and significance of any order designating the Civil Court judge as an Acting Justice of the Supreme Court for this matter, we afforded the parties to this appeal an opportunity to submit simultaneous post-argument letter briefs on the issue and have considered their responses.
The determination of whether to judicially notice a court-generated document ultimately rests upon whether the document is reliable, the accuracy and veracity of which cannot be disputed. Court-generated orders from the Chief Administrative Judge, designating a jurist of one court as an acting jurist in another court, satisfy the requisite reliability, accuracy, and veracity as to be uncontestable for judicial notice. Consequently, in rendering our decision on this appeal, we recognize that as of January 5, 2012, Judge Marrazzo was designated as an Acting Justice of the Supreme Court.
III. Retransfer Of The Action To Supreme Court
Nelson argues that, since the Civil Court had concluded the action by the filing of a final judgment, there was no longer any action actually pending for retransfer to the Supreme Court under CPLR 325(b).
The transfer of actions and proceedings between courts is addressed and permitted in article VI, § 19(a) of the New York State Constitution. The mechanics of such transfers are statutorily set forth in CPLR 325. Subdivision (b) of CPLR 325 expressly provides that when a court "in which an action is pending" does not have the jurisdiction to grant the relief to which the parties [*4]are entitled, a court having such jurisdiction may remove the action to itself upon motion.
Conversely, actions may be transferred from a court in which an action is pending to a lower court (see CPLR 325[d]). Where the transfer of an action to a lower court is on consent of the parties, they are bound by the monetary jurisdictional limits of the transferee court (see CPLR 325[c]; Hoboken Wood Flooring Corp. v Fischoff, 10 Misc 3d 1065[A], 2005 NY Slip Op 52154[U] *1 [Sup Ct, Nassau County]). By contrast, where, as here, the transfer is not on consent of the parties, the transferee court may render a verdict or judgment to the extent of the monetary jurisdiction of the transferor court (see CPLR 325[d]; Delaine v Finger Lakes Fire & Cas. Co., 23 AD3d 1143, 1145; Tobias v New York Hosp., 279 AD2d 374; Samuels v Cauldwell-Wingate Co., 262 AD2d 178, 179; see also 22 NYCRR 202.13[a]). Notably, the precise language of CPLR 325(d) confers upon the lower court the right to render a verdict or judgment in excess of its "monetary jurisdiction" but which, by statutory construction, does nothing to expand the lower court's nonmonetary jurisdiction. Thus, the lower court must independently possess nonmonetary subject matter jurisdiction over the case in controversy in order to properly act upon the transfer (see Lex 33 Assoc. v Grasso, 283 AD2d 272, 273; Doo Soon Chung v Doo Nam Kim, 170 AD2d 232, 233; Philadelphia Indem. Ins. Co. v Goggins-Starr, 30 Misc 3d 459, 461 [Nassau Dist Ct]; Briscoe v White, 8 Misc 3d 1, 3 [App Term, 2d Dept]; Bess v Fordham Rd. Stor. Partners, 195 Misc 2d 674, 676 [Sup Ct, Bronx County]; Lambs, Inc. v Diven, 2001 NY Slip Op 40700[U] [Civ Ct, NY County]; BLF Realty Holding Corp. v Kasher, 183 Misc 2d 953, 954 [App Term, 1st Dept]; Spinnell v Doris L. Sassower, P.C., 155 Misc 2d 147, 150 [Civ Ct, NY County]), regardless of the amount of monetary damages that may be awarded.
All of the parties in this action correctly acknowledge that in this instance, the Civil Court was without subject matter jurisdiction to entertain the plaintiff's causes of action in equity (see NY Const, art VI, § 15[b]; NY City Civ Ct Act §§ 201-209, 212, 213).
In rare prior instances where, as here, the Supreme Court erroneously transferred an action to a Civil Court that lacked subject matter jurisdiction, this Court and other Appellate Divisions have held that a retransfer to the Supreme Court under CPLR 325(b) is appropriate (see Priel v Linarello, 44 AD3d 835; Feierstein v Moser, 306 AD2d 27, 28; Zuckermann v Spector, 287 AD2d 402, 402-403; Decana, Inc. v Ross Intl., 227 AD2d 208). Indeed, "[i]t was not the legislative intent that an action once removed to a lower court may not ever be re-transferred" (Huston v Rao, 74 AD2d 127, 130; see Bess v Fordham Rd. Stor. Partners, 195 Misc 2d at 676; Gordon v Board of Educ. of City of New York, 134 Misc 2d 284, 286-287 [Civ Ct, Kings County]; see also Moran v Regency Sav. Bank, F.S.B., 30 AD3d 237, 238). The circumstances of the retransfer that occurred here fall squarely within the enabling language of CPLR 325(b).
The foregoing analysis, however, does not necessarily address the related question raised by Nelson of whether a CPLR 325(b) retransfer may occur after the lower court has entered a final judgment in the matter, since CPLR 325(b) states that an action must be pending for a court with jurisdiction to remove an action to itself from a court that lacks jurisdiction. There appears to be no reported case directly confronting this issue. Under the circumstances present here, we find that the action in the Civil Court was still pending and had not fully concluded at the time it was retransferred to the Supreme Court.
The first and most basic reason the action was still pending is that the Civil Court judgment was rendered in the absence of subject matter jurisdiction. A judgment rendered by a court without subject matter jurisdiction is void as a matter of law (see Manhattan Telecom. Corp. v H & A Locksmith, Inc., 21 NY3d 200, 203; Lacks v Lacks, 41 NY2d 71, 75; Matter of Metropolitan Transp. Auth., 32 AD3d 943, 944-945; ERA Realty Co. v RBS Props., 185 AD2d 871, 872-873). It
follows that if the Civil Court judgment is void, then the action was never disposed of and remained pending.
A second and more nuanced reason that Caffrey's action had not concluded by the time of its retransfer to the Supreme Court involves the appeal that had been taken to the Appellate Term. Although a judgment had been entered by the Clerk of the Civil Court on January 17, 2014, that judgment was the subject of an appeal still pending in the Appellate Term as of February 25, 2015, the date of the order by which the Supreme Court removed the Civil Court action to itself. The action may therefore be deemed an active and continuing one at the time of its retransfer to Supreme Court (cf. Hart v General Motors Corp., 129 AD2d 179, 187 n 7).
Our holding that the Civil Court action was still viable and pending in order for the Supreme Court to remove it to itself is consistent with cases determined in analogous CPLR [*5]contexts. For example, in actions involving the six-month window for re-commencing certain actions pursuant to CPLR 205(a) that would otherwise be time-barred, the Court of Appeals has held that the termination of a prior action from which the six months is measured occurs when appeals as of right are exhausted (see Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d 514, 519; Lehman Bros. v Hughes Hubbard & Reed, 92 NY2d 1014, 1016-1017) or when discretionary appellate review is granted, upon final determination of the discretionary appeal (see Joseph Francese, Inc. v Enlarged City School Dist. of Troy, 95 NY2d 59, 64; see also Malay v City of Syracuse, 25 NY3d 323, 325). The First Department has interpreted the meaning of the phrase "termination of the action" in connection with CPLR 203(e). That statute provides that the time the action was commenced and the time the action was terminated is not to be counted as part of the time to commence an action to recover upon a defense or counterclaim. The First Department defined "termination of the action" as including the exhaustion of discretionary appeals (Britt v Nestor, 145 AD3d 544, 545). By analogy, the appeal of the Civil Court's judgment meant that this action had not concluded at the time it was retransferred to the Supreme Court.
Accordingly, the Supreme Court was within its discretionary authority to remove the parties' action to itself under CPLR 325(b), notwithstanding the entry of the Civil Court judgment.
IV. The Authority Of An Acting Supreme Court Justice
Caffrey argues in her postargument submission that Judge Marrazzo, upon being designated an Acting Justice of the Supreme Court, possessed the jurisdiction to hear any action, anywhere, that fell within the subject matter jurisdiction of the Supreme Court, citing the New York State Constitution, article VI, § 26 and People v Correa (15 NY3d 213). By contrast, Nelson argues in his postargument submission that, since Judge Marrazzo heard the trial in Civil Court by virtue of the CPLR 325(d) transfer, the Civil Court lacked subject matter jurisdiction regardless of the fact that he had been designated an Acting Supreme Court Justice, citing Matter of Nolan v Lungen (61 NY2d 788) and People v McCarthy (250 NY 358). We therefore address the following question: Does the designation as an Acting Justice of the Supreme Court attach to the jurist and follow that jurist wherever he or she professionally travels, or is the designation triggered only when the jurist is assigned at the relevant time to preside over Supreme Court cases?
Our State Constitution provides in article VI, § 28(a), that the Chief Judge of the Court of Appeals is the chief judicial officer of the unified court system. Further, with the advice and consent of the Administrative Board comprised of the Chief Judge and the presiding justices of the four appellate divisions, the Chief Judge shall appoint a Chief Administrator of the courts (see id.). Article VI, § 28(b) of the New York Constitution defines the administrative authority of the Chief Administrator as including, rather expansively, "such powers and duties as may be delegated to him or her by the chief judge" (see 22 NYCRR 80.1, 81.1[a]). The Chief Judge, upon consultation with the Administrative Board, shall establish standards and administrative policies for general application to the unified court system, which specifically include the "transfer of judges and causes among the courts" (Judiciary Law § 211[1][a]). The transfer of judges by the Chief Judge, or by delegation of the authority to the Chief Administrator, has been limited only by the requirement that doing so be in accordance with the promulgated standards and administrative policies required by the Judiciary Law (see Judiciary Law § 212[2][c]; Matter of Morgenthau v Cooke, 56 NY2d 24, 31-32). Otherwise, the Chief Administrator's powers are complete, and he or she "may employ them fully when and while and to the extent that they have been delegated to him" (Corkum v Bartlett, 46 NY2d 424, 429).
The New York Constitution, article VI, § 26 permits the temporary assignment of jurists between courts, and section 26(g) specifically authorizes the assignment of an elected judge of the Civil Court to the Supreme Court in the judicial department of his or her residence. Once a judge is temporarily assigned, in the authorized manner described above, he or she acquires all of the powers, duty, and jurisdiction of the judge or justices of the court of assignment (see People v Rodriguez y Paz, 58 NY2d 327, 337; People v Burgos, 103 AD2d 751; Matter of Moritt v Nadjari, 51 AD2d 754, 756).
Decisional authority has recognized that the Chief Administrative Judge is vested with wide discretion when temporarily assigning jurists between courts. In People v Correa, the Court of Appeals upheld the rules of the Chief Judge that established Integrated Domestic Violence Parts (IDV Parts), by which certain misdemeanor cases typically handled in lower criminal courts are transferred to a County Court or Supreme Court for trial with related domestic relations matters, [*6]and County Court or Supreme Court justices are designated to hear them (see id. at 229-231). Similarly, the authority of an Administrative Judge of a Judicial District to unilaterally assign 15 related complex matters to a single Justice of the Supreme Court was upheld and found not to be a violation of due process (see Bankers Trust Co. v Braten, 101 Misc 2d 227, 231-232 [Sup Ct, NY County]). The court noted in Bankers Trust that "[o]nly the Administrative Judge, and not any single Justice sitting in Special or Trial Term, has an over-all view of the needs and requirements of the whole court, and the relative availability of individual Justices to make the necessary decision on assignment" (id. at 232). The same reasoning applies to the creation of, and judicial assignments to, specialized parts such as commercial, matrimonial, tax certiorari, medical malpractice, and criminal plea parts.
Recognizing, as we do, that the Chief Administrative Judge may temporarily assign Civil Court judges to the Supreme Court, it logically follows that such discretionary designations may be subject to conditions and restrictions. Here, Administrative Order 227/2012, of which we take judicial notice, and which designated Civil Court Judge Marrazzo as an Acting Justice of the Supreme Court, was not unrestricted and open-ended, but instead was subject by its expressed terms to a crucial limitation; namely, the judge was assigned "as an Acting Justice of the Supreme Court, to serve in the Supreme Court, Thirteenth Judicial District, Civil Term" (emphasis added). Although Judge Marrazzo was not divested of his authority to function as a Civil Court judge in the Civil Court, the Administrative Order only permitted him to act in the additional capacity of Acting Justice of the Supreme Court for matters pending in the Supreme Court itself, having Supreme Court captions and index numbers. Conversely, Administrative Order 227/2012 did not address or confer Acting Supreme Court status on Judge Marrazzo to hear and adjudicate matters pending elsewhere, such as in the Civil Court. It is also beyond cavil that an Administrative Order cannot expand the subject matter jurisdiction of the Civil Court that does not otherwise exist under the State's Constitution.
We have considered, but reject, the notion that Judge Marrazzo had "in effect" self-transferred the action back to Supreme Court for trial, rendering the trial and judgment jurisdictionally valid. The decision rendered after the trial reflected the Civil Court's index number (300061-2011) rather than the original index number of the Supreme Court (102525/09). An "in effect" retransfer at the time of trial is inconsistent with the filing of a posttrial judgment in the Civil Court, and inconsistent with Caffrey's later motion to retransfer the action to Supreme Court, which was contested by the parties and decided by the Supreme Court on its merits.
We suspect, giving the Civil Court the credit and good faith it is due, that the instant matter may have been selectively assigned to Judge Marrazzo, recognizing that the plaintiff's complaint interposed equitable causes of action and further recognizing that Judge Marrazzo had been granted Acting Supreme Court status. Yet, given the limiting language of that designation in the Administrative Order, we cannot hold that the Administrative Order cured the subject matter jurisdictional infirmity afflicting the action as a result of its erroneous transfer to the Civil Court under CPLR 325(d). Subject matter jurisdiction is a concept that is absolute—it either exists in its entirety or it does not exist at all. A defect in subject matter jurisdiction may be raised at any time by any party or by the court itself, and subject matter jurisdiction cannot be created through waiver, estoppel, laches, or consent (see Financial Indus. Regulatory Auth., Inc. v Fiero, 10 NY3d 12, 17; Matter of Rougeron, 17 NY2d 264, 271; Strunk v New York State Bd. of Elections, 126 AD3d 777, 779; Matter of Hart Family, LLC v Town of Lake George, 110 AD3d 1278, 1280; Burke v Aspland, 56 AD3d 1001, 1003; Morrison v Budget Rent A Car Sys., 230 AD2d 253, 260; Matter of Anthony J., 143 AD2d 668, 668-669). Similarly, defects in subject jurisdiction may never be waived (see Nash v Port Auth. of N.Y. & N.J., 22 NY3d 220, 229; Manhattan Telecom. Corp. v H & A Locksmith, Inc., 21 NY3d at 203; Editorial Photocolor Archives v Granger Collection, 61 NY2d 517, 523; Lacks v Lacks, 41 NY2d at 74-75). While Judge Marrazzo, by virtue of his designation as an Acting Justice of the Supreme Court, would have been authorized to preside over the trial of this matter had it been pending in the Supreme Court, the same cannot be said for the trial in the Civil Court where the Administrative Order had no administrative or substantive relevance.
Where subject matter jurisdiction is concerned, courts, including our own, may not cut corners. As a matter of both constitutional adherence and public policy, the Appellate Division must guard against courts acting outside of their subject matter jurisdiction, even if they do so unwittingly, in good faith, or in furtherance of judicial economy. Accordingly, we hold that the duties of an Acting Justice of the Supreme Court directed to matters pending in the Supreme Court [*7]operate only as to actions and proceedings pending in that particular court, and not for cases litigated elsewhere. In other words, a judge of the Civil Court with a limited Acting Supreme Court Justice designation has no authority in an action pending at the Civil Court to exceed the nonmonetary subject matter jurisdiction of that court, regardless of whatever more expansive authority he or she may possess for other assignments pending in the Supreme Court.
Further, since the Civil Court was without jurisdiction to try the instant matter, rendering the trial and judgment void, its findings of fact and conclusions of law cannot as a matter of comity, res judicata, law of the case, or otherwise, be recognized by the Supreme Court upon its CPLR 325(b) removal of the action, and cannot provide a basis for the Supreme Court judgment presently on appeal.
V. Miscellaneous
In light of the jurisdictional infirmities discussed, Nelson's remaining contentions raised on appeal regarding the trial itself have been rendered academic.
Accordingly, the judgment dated March 13, 2015, is reversed insofar as appealed from, on the law, and the matter is remitted to the Supreme Court, Richmond County, for further proceedings consistent herewith.
CHAMBERS, COHEN and IANNACCI, JJ., concur.
ORDERED that the judgment dated March 13, 2015, is reversed insofar as appealed from, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Richmond County, for further proceedings consistent herewith.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The trial decision styled Caffrey's action as sounding in breach of contract. However, the complaint does not set forth any cause of action alleging breach of contract, and only alleges equitable causes of action. The record contains no order conforming the pleadings to the proof for basing the decision upon the ground of breach of contract.